[S. F. No. 5049.    Department One.—September 20, 1909.]

## W. G. ALLEN, Respondent, v. GLOBE GRAIN AND MILLING COMPANY et al., Defendants; GLOBE GRAIN AND MILLING COMPANY, Appellant.

VENDOR AND VENDEE—CONTRACT FOR SALE OF LAND IN SAN FRANCISCO— DESTRUCTION OF PUBLIC RECORDS BY FIRE—TITLE FAIRLY DEDUCIBLE OF RECORD.—Where a contract of sale relating to real property in San Francisco made prior to the fire of April 18-20, 1906, the time fixed for the performance of which had not arrived at the time of said fire, was such as to entitle the vendee to a title "fairly deducible of record," the vendee cannot be required to take such property in view of the destruction of the official records. The destruction of such record rendered the title defective within the meaning of such contract, and in determining the vendee's rights consideration can only be given to the title as it existed at the time fixed for the performance of the contract and the delivery of the conveyance.

ID.—RECOVERY BY VENDEE OF DEPOSIT.—In such case, the vendee is entitled to recover from the vendor the portion of the consideration paid at the time of the execution of the contract, where the agreement provides for such return if the title is found to be defective.

ID.—AGREEMENT FOR PERFECT TITLE.—Where the provisions of a contract for the sale of real estate are such as to call for a "perfect title," the purchaser is entitled to a title free from reasonable doubt and fairly deducible of record.

ID.—PROVISIONS EQUIVALENT TO AGREEMENT FOR PERFECT TITLE.—Provisions in such a contract calling for a "valid title," for a title that was not "defective," and for a "perfected" title in the event that on examination the title was found to be defective, are equivalent to a provision calling for a "perfect title," and when read in connection with a provision for "examination of the title," will be construed as calling for "a good title by the record."

ID.—NOTICE OF REJECTION—TITLE NOT FAIRLY DEDUCIBLE OF RECORD.— A notice from the vendee to the vendor, given after the fire of April, 1906, rejecting the title for the reason "that there is no official record in the city and county of San Francisco showing that you are the owner in fee of said property or any part thereof, and nothing to show that the record title to the same is vested in you," is a sufficient notice that the rejection was made for the reason that the vendor did not have a title fairly deducible of record.

ID.—ACTION TO RECOVER DEPOSIT AGAINST VENDOR AND AGENT—JUDGMENT AGAINST VENDOR—IMMATERIAL VARIANCE.—In an action by the vendee to recover the deposit made at the time of the execution of the contract of sale, a judgment rendered in favor of the vendee

against the vendor after trial upon the merits will not be reversed because the court improperly overruled a demurrer to the complaint on the ground of the misjoinder of the agent of the vendor as one of the parties defendant.

ID.—DEFENDANTS JOINTLY CHARGED—FORM OF JUDGMENT.—In this state, judgment may be given against such of several defendants jointly charged. as are shown to be liable, and in favor of the others who are not shown to be liable, subject perhaps to the qualification that the defendants held liable are entitled to be protected against any material variance between the pleadings and the proof.

ID.—IMMATERIAL VARIANCE IN EVIDENCE.—In such an action, there is no material variance between a complaint alleging a joint liability by two "defendants" for the deposit, and evidence showing that as to one of the defendants the deposit was received by it solely as agent of the vendor.

ID.—SEASONABLE NOTICE OF DEFECT IN TITLE.—Where the contract was entered into on April 11, 1906, and required the vendor to return the deposit on demand therefor, if the title was not found valid or was defective and was not made valid or perfected within sixty days after notice to the vendor of the defect, provided the vendee gave seasonable notice of the defect and rejection on account thereof, a notice of the defect given on June 4, 1906,—each day from April 20, 1906, to June 3, 1906, having been made a holiday,—was seasonably given.

ID.—DEMAND FOR REPAYMENT OF DEPOSIT—NOTIFICATION TO PERFECT TITLE.—Where such notice was an unqualified and absolute rejection of the title as it then stood, a further notification therein that the vendee would insist upon a return of the deposit if the vendor could not or did not perfect the title within sixty days, the time allowed the vendor by the contract within which to obviate any defect found, did not operate to waive any right the vendee had to recover the deposit, although it was obvious to both such parties that the defect was such that it could not be obviated within such time or any reasonable time thereafter.

ID.—INTEREST RECOVERABLE ON DEPOSIT.—The vendee is only entitled to recover interest on such deposit from the date on which the demand was made for its return. In the absence of any other evidence, the date of the commencement of the action for its recovery will be assumed to be the date of the demand for the return of the deposit.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, for Appellant.

Walter H. Linforth, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant Globe Grain and Milling Company from a judgment in favor of plaintiff, and from an order denying its motion for a new trial, in an action brought to recover the sum of five thousand dollars, a deposit paid by plaintiff, as vendee, to the Globe etc. Co., as vendor, under a written contract for the sale of certain real property in San Francisco.

The contract was entered into on April 11, 1906, and bore that date. It recited the sale by said company to plaintiff of the property, describing it, for one hundred and two thousand dollars, five thousand dollars cash, the receipt of which was acknowledged, and ninety-seven thousand dollars payable on or before June 1, 1906. It then provided: "30 days (from the date hereof) are to be allowed for the examination of the title. If the title is not found valid, or made so, within 60 days after notice to us of the defect therein, the deposit for which this is a receipt is to be returned upon demand. If the title is found, or made valid, within the time herein specified, and the sale is not closed in accordance with the above terms, the sum of $5,000.00 for which this is a receipt, is to be forfeited. . . . The owner hereby binds itself upon receipt of the purchase money, to deliver to said W. G. Allen a valid title to said property. But if the title is defective, and it cannot be perfected within the time above specified, this contract will thereupon become null and void. Due diligence, however, will be exerted by the seller in perfecting the title. Time is of the essence of this contract." Within the time specified in said contract for "the examination of the title,"— viz. on June 4, 1906 (each and every day from and including April 20, 1906, to and including June 3, 1906, having been a legal holiday duly and regularly declared by the governor of the state), plaintiff served upon said company and its agent, Baldwin & Howell, written notice, directed to each and which read as follows: "I hereby reject the title to the property described in the contract made and entered into between us April 11, 1906, for the reason that there is no official record in the city and county of San Francisco, showing that you are the owner in fee of said property, or any part thereof, and nothing to show that the record title to the same is vested in

you.  Please have this defect cured within sixty (60) days from the date hereof, or I will demand the return of the deposit of five thousand dollars ($5,000.00), as per terms of our agreement."   At that time and at all times after April 19, 1906, it was alleged and found, the vendor "did not have a good, perfect or valid title to the said property or any part thereof" for the reasons stated in said notice already set forth. The evidence in support of this allegation and finding was practically the same as that given in *Crim* v. *Umbsen,* 155 Cal. 697, [103 Pac. 378], showing as stated in that case, that in the great conflagration of April 18-20, 1906, "the greater part of the records of the county recorder's office, as well as most of the other public and official records of San Francisco, were burned," with the result that it was impossible to determine from any public or official record whether or not the vendor's title was valid or perfect.   Nothing was done in the way of perfecting the record title.   After the expiration of the sixty days specified in said notice of rejection of title, the plaintiff demanded the return of the five thousand dollars deposit.  Payment thereof being refused, this action was instituted.   The date of such demand is not alleged, and we must assume that it was not made prior to the day on which the complaint was verified and the action instituted, December 13, 1906.

Learned counsel for appellant concede that it is established by the decision in *Crim* v. *Umbsen,* decided after the taking of this appeal, and after the filing of appellant's opening brief, and as to which a petition for rehearing was denied, that where a contract of sale relating to real property in the city and county of San Francisco made prior to the fire of April 18-20, 1906, the time fixed for the performance of which had not arrived at the time of said fire, was such as to entitle the vendee to a title "fairly deducible of record," the vendee could not be required to take such property in view of such destruction of official records, the theory of the decision being that the title was rendered defective within the meaning of the contract by such destruction of records, and that in determining the vendee's rights we can only consider the title as it existed at the time fixed for the performance of the contract and the delivery of the conveyance.   It was further decided in that case that such a vendee was entitled to recover from the vendor the portion of the consideration paid at the time of the execution

of the contract, the agreement in that case providing, as does the agreement here, for a return of such consideration if the title was found to be defective. Upon his cross-complaint filed in the action brought against him by the vendor for damages for breach of contract, the vendee in that case was given judgment for the recovery of the portion of the consideration paid by him.

It is urged that the contract in the case at bar did not call for a title "fairly deducible of record." This fact was conceded by counsel for the vendors in *Crim* v. *Umbsen* as to the contract there involved, such contract providing that the vendee should have thirty days for examination of the title, that the vendors should have thirty days to "perfect" the title if it was found to be defective, and that if the title proved to be incurably "defective" the deposit was to be returned. We have no doubt that counsel in that case were amply warranted in making this concession in view of the decisions of this court. It is settled law in this state that where the provisions of a contract for the sale of real estate are such as to call for a "perfect title," the purchaser is entitled to a title free from reasonable doubt and fairly deducible of record. (See *Gwin* v. *Calegaris,* 139 Cal. 384, [73 Pac. 851], and cases there cited. *Peckham* v. *Stewart,* 97 Cal. 147, [31 Pac. 928]. See, also, *Title etc. Co.* v. *Kerrigan,* 150 Cal. 305, [119 Am. St. Rep. 199, 88 Pac. 356].) The provisions in the contract in the case at bar were, as we have seen, for a "valid title," for a title that was not "defective," for a "perfected" title in the event that on examination the title was found to be defective. It was expressly provided "that if the title is defective and it cannot be perfected within the time above specified this contract will thereupon become null and void." These provisions practically called for a "perfect title" to the same extent as if the precise words "perfect title" had been used. When these provisions are read in connection with the provision for "examination of the title," which clearly referred to an examination of the public records, we cannot doubt that the parties were stipulating for "a good title by the record." (See *Gwin* v. *Calegaris,* 139 Cal. 384, [73 Pac. 851].)

The notice of rejection of title served on appellant did substantially show that the objection was that appellant did not have a title fairly deducible of record. The reason as specified in the notice was "that there is no official record in the city

and county of San Francisco showing that you are the owner in fee of said property or any part thereof, and nothing to show that the record title to the same is vested in you." This was a sufficient specification of the particular objection under the peculiar circumstances of this case. There could not have been uncertainty in the mind of appellant as to the meaning of the objection specified, and the precise nature of the defect on account of which the title was rejected.

No other claim not disposed of by the decision in *Crim* v. *Umbsen*, 155 Cal. 697, [103 Pac. 178], was made in the opening brief of appellant, except the claim that it was either prejudicial error to overrule demurrers interposed to the complaint on the ground of misjoinder of parties defendant, or that the judgment rendered against appellant alone and in favor of its co-defendant, Baldwin & Howell, constitutes a fatal variance between the pleadings and judgment, in that if any cause of action was stated against both defendants it was a joint cause of action, and that a judgment could not be given against one only of two or more persons against whom a joint cause of action is alleged. Defendant Baldwin & Howell, a corporation, was the agent of the appellant in the matter of making this contract, and it was alleged in the complaint that the five thousand dollars was paid to the "defendants." The trial court finding that the five thousand dollars was paid by plaintiff to and received by Baldwin & Howell solely as the agent for the appellant, concluded that plaintiff was not entitled to any judgment against said Baldwin & Howell, and gave judgment accordingly and in favor of Baldwin & Howell for its costs. Appellant's contention for a reversal because of the rulings of the court in this regard is wholly without merit. We shall not discuss the question whether or not there was any misjoinder in making Baldwin & Howell a party defendant. That defendant prevailed in the action and is not appealing. Appellant was undoubtedly solely liable to plaintiff upon the facts found, the money having been paid to and received by Baldwin & Howell solely as the agent of the appellant, and having been accounted for and paid to appellant by it. If we assume that Baldwin & Howell was improperly joined as a party defendant, it is nevertheless impossible to conceive of any reason why appellant could have been prejudiced in the slightest degree by such misjoinder.

Under such circumstances the judgment should not be reversed even if Baldwin & Howell should not have been joined as a defendant. "It seems to be thoroughly settled that a judgment after trial upon the merits will not be reversed because the court improperly overruled a demurrer on the ground of misjoinder of parties, where it is plain that such misjoinder did not affect any substantial right of a party." (See *Woolacott* v. *Meekin,* 151 Cal. 701, 706, [91 Pac. 612], and cases there cited.) It is settled in this state that judgment may be given against such of several defendants jointly charged as are shown to be liable and in favor of the others who are not shown to be liable, subject perhaps to the qualification that the defendants held liable are entitled to be protected against any material variance between the pleadings and the proof. There was no such material variance here. (See *Redwood City Salt Co.* v. *Whitney,* 153 Cal. 421, 423, [95 Pac. 885], and cases there cited; *Dobbs* v. *Purinton,* 136 Cal. 70, [68 Pac. 323].)

As to certain other claims made for the first time in appellant's reply brief: By the express terms of the contract appellant was required to return to plaintiff the five thousand dollars deposit on demand therefor, if the title was not found valid or was defective and was not made valid or perfected within sixty days after notice to appellant of the defect, provided, it may be conceded for the purposes of this decision, that plaintiff gave seasonable notice of the defect and rejection on account thereof. In view of the facts found, the notice of June 4, 1906, was seasonably given. This notice was an unqualified and absolute rejection of the title as it then stood, and a notification that plaintiff would insist upon a return of the five thousand dollars if appellant could not or did not perfect the title within sixty days, the time allowed the appellant by the contract within which to obviate any defect found. If, as claimed by learned counsel, it was obvious to both plaintiff and appellant that the defect was such that it could not be obviated within the stipulated time or within any reasonable time thereafter, appellant would have been entirely warranted in accepting this notice as an absolute rejection, and treating the contract of sale as being no longer effectual. Although it may be that under such circumstances it was not necessary for plaintiff to give appellant sixty days within which to perfect the title, plaintiff cannot be criticised or held to have

waived any right for thus conforming to the express provisions of the contract. At the end of the sixty days, the defect not having been obviated, it is clear that, in view of the notice of June 4, 1906, the contract of sale was at an end. The liability of appellant to pay the five thousand dollars was then fixed and absolute, and the money was payable whenever demanded by plaintiff. The mere deferring of this demand for the money could not operate to deprive plaintiff of the right to recover it, provided the demand was made within such time as would prevent the application of the statute of limitations as a bar. As we have seen, such demand was made prior to the commencement of this action, and must here be assumed to have been made on December 13, 1906, the day on which the action was commenced.

It is further claimed for the first time in appellant's reply brief that the judgment should be modified by deducting a portion of the interest allowed. The trial court allowed interest at the legal rate from April 11, 1906, the day on which the contract was executed and the payment of five thousand dollars was made. It is obvious that in this respect the judgment is erroneous and unfair to appellant. The money was rightfully received and held by appellant under the terms of the contract until its return was demanded. Such demand was not made until December 13, 1906. Interest should have been allowed only from that date, instead of from April 11, 1906. Under these views, the judgment is excessive by $235. This objection not having been specifically made prior to the filing in this court of appellant's reply brief, and in no degree constituting a ground upon which the appeal was taken to this court, we are satisfied that our ruling thereon should not affect the question of payment of costs of appeal.

The order denying a new trial is affirmed. The judgment is modified by deducting from the amount of $5527.91 awarded plaintiff against appellant, the amount of $235, so that the same shall stand for the amount of $5292.91 (instead of $5527.91), with interest thereon at the rate of seven per cent per annum from October 14, 1907, the date thereof, together with plaintiff's costs amounting to twenty-three dollars, and as so modified said judgment is affirmed. Appellant shall not recover any costs of this appeal.

Shaw, J., and Sloss, J., concurred.