[Civ. No. 16518.   Second Dist., Div. One.   Mar. 18, 1949.]

GEORGE G. RIFF, Plaintiff and Appellant, v. PETER L. MAYHEW, Defendant; BOYD B. ASHCRAFT et al., Defendants and Appellants.

Ball, Hunt and Hart and Joseph A. Ball for Plaintiff and Appellant.

Julian P. Van Dyke, in pro. per., Archie G. Cope, E. O. Leake and J. J. Leake for Defendants and Appellants.

DORAN, Acting P. J.—The plaintiff, George G. Riff, filed the present action for the recovery of $25,000 deposited with the defendant Peter L. Mayhew, as escrow holder. The escrow instructions involved herein, relate to the purchase by plaintiff and sale by the appellants of a certain "Cocktail Lounge and Restaurant Business known as 'THE NEW ARMY AND NAVY CLUB,'" located at 1800 East Ocean Boulevard in the city of Long Beach.

The record discloses evidence to the effect that prior to October, 1946, one Einar Petersen had operated the "Army and Navy Club" at the address in question; that appellant Van Dyke and associates then purchased the liquor license and equipment from Petersen. According to the Van Dyke testimony, appellant Boyd Ashcraft was the manager thereof, and "We sold liquor and food to anybody we could sell it to." It also appears that the area where the place was located was zoned for apartment house use; that while social clubs were permitted, the ordinance did not permit public places of entertainment, restaurants or cafés.

Van Dyke and Ashcraft sought to obtain an entertainment café license; this was opposed by the city director of planning; the applicants then secured a continuance of the hearing until November 26, 1946, and a further continuance until December 10, 1946, which, it may be noted, was the date when the escrow was opened for the sale of the place to Riff. Appellant Van Dyke, an attorney at law, also filed a petition

on behalf of the owner of the real estate for a special permit to operate a cocktail bar on the premises; this was noticed for hearing on December 19, 1946, and was denied by the planning commission. On January 7, 1947, the city council also denied the appellants' application for an entertainment café license. "Anticipating the success of his petition to rezone the property," states respondent's brief, so as to permit a general sale of liquor, "Van Dyke and associates entered into a contract to sell to the plaintiff," and opened an escrow for that purpose.

The escrow agreement, dated December 10, 1946, and hereinbefore referred to, provided for the sale by appellants to Riff of the on-sale alcoholic beverage license, the cocktail lounge and restaurant equipment, stock of liquors, etc., of the "New Army and Navy Club." The liquor stock was inventoried and paid for outside of escrow. Riff agreed to and did pay into escrow the sum of $25,000, and was to pay a further balance of $7,500 on or before January 7, 1947, which latter amount was not paid. According to the escrow instructions, it was "understood and agreed . . . that the personal property aforementioned . . . are purchased . . . for the purpose of operating and conducting AN ON-SALE Distilled Spirits, Liquor, Beer, Wine, Beverages and General Merchandise establishment, and to engage in the sale of such Liquors and Beverages in accordance with the above mentioned license(s)."

The plaintiff Riff entered into immediate possession of the premises pursuant to oral agreement and operated the cocktail bar from December 10, 1946, to January 7, 1947. On the latter date a police officer informed the plaintiff that public sale of liquors at that location was in violation of a zoning ordinance, after which time the place was not open to the general public, and was finally closed on February 28, 1947.

After conference with defendant Ashcraft, operation of the place as a social club was suggested; an entertainment permit was applied for and was refused by the Long Beach City Council.

On February 28, 1947, the State Board of Equalization denied the application of appellants to transfer to plaintiff a liquor license covering the location in question, on the stated grounds that Riff was not the real party in interest and that the application had contained misrepresentations.

On February 28, 1947, the same day that the application for transfer of the liquor license was denied, plaintiff gave notice to appellants of "Election to Terminate Escrow," which notice was "upon the ground and for the reason that the undersigned Vendee and Intended Transferee has been unable to obtain and has been refused by the State Board of Equalization the transfer from Vendors and Licensees to Vendee and Intended Transferee and Licensees have failed to obtain the transfer of that certain On-Sale General License described in said escrow agreement." The notice further demanded return from the escrow holder of all sums deposited by the plaintiff. On the same day Riff abandoned the premises, taking away such liquors as had not been sold during operation of the business.

Plaintiff's complaint for rescission is based upon the denial of the application for transfer of the liquor license, and also alleged that appellants were in default in failing to deliver into escrow a valid sublease or assignment of lease, and that appellants had no interest which could be transferred by assignment or sublease. Appellants' answer admitted plaintiff's payment of the $25,000 in escrow; denied that any final determination as to transfer of the license had been made and alleged that a further hearing thereon before the Board of Equalization had been set for April 8, 1947. The answer also alleged that plaintiff had failed to comply with the escrow agreement in that the balance of $7,500 had not been deposited.

A cross-complaint was filed in which defendants alleged that two other parties, James Blankenship and Claude Bolling, named with Riff as cross-defendants, were copartners in the purchase of the "New Army and Navy Club"; that Riff had neglected and refused to disclose such names to the Board of Equalization, which fact resulted in denial of the application for transfer of the liquor license.

The trial court found that the escrow agreement had been entered into as hereinbefore related for the purpose of enabling Riff to acquire and operate an on-sale liquor and general merchandise establishment; that the sellers were unable to obtain a transfer of the general on-sale liquor license to plaintiff, and that the latter was unable to secure such a license. It was further found that although plaintiff did misstate certain facts to the Equalization Board and did not disclose the financial interest of Blankenship and Bolling in the proposed business, this was not done for the purpose of preventing the transfer of the license; that the transfer of the license

was not "denied solely by reason of the fact that George G. Riff withheld information . . . and misrepresented material facts"; that the property in question was so zoned that sale of liquors to the general public could not be there conducted.

There were also findings to the effect that the appellants were in default in failing to provide a valid sublease to the premises; that the major lease thereto had been null and void since January 7, 1947, since which date appellants had no interest in and to said premises; hence that appellants were unable to comply with the agreement; that by reason of these facts there had been a material failure of consideration. Judgment was entered in plaintiff's favor, for the recovery of the $25,000 plaintiff had deposited in escrow, plus $525 which plaintiff had paid out for a renewal of the license.

According to appellants' brief, "The sole question involved in this case is: Did Riff have the right to rescind the escrow agreement on February 28, 1947, by reason of the denial of the (license) transfer on that date?" It is submitted that plaintiff had no right to rescind for several reasons; first, "Riff was in default . . . by reason of the fact that he failed to deposit in escrow, . . . the sum of $7500 on or before January 7, 1947"; second, "Riff failed to offer to return and restore the property received and retained by him as a part of the transaction, to wit, the stock of liquor," etc., and that Riff "failed to account . . . for the operation of said premises from the period of December 10, 1946, to February 28, 1947." As a third reason it is urged that plaintiff had no right to rescind because "The transfer of the liquor license was refused solely and only because of the fraud and deceit of Riff in his application for the transfer and was not occasioned by any fault or act of defendants."

The plaintiff Riff, according to respondent's brief, "sets forth facts showing a material failure of consideration in that the sellers were unable to obtain an assignment to him of the liquor license, and were unable to transfer to him an interest in the real property upon which the leasehold improvements were located by either assignment or sublease." In this connection respondent calls attention to the fact that under the zoning law, no transfer of the general liquor license could be made, and that "nothing Riff did or could have done changed the situation." Also mentioned, as found by the trial court, is the fact that since the stock of liquors was sold and paid for by Riff under an oral agreement outside of escrow, such completed transfer required no offer to restore the mer-

chandise as a prerequisite to plaintiff's right to rescind. It is urged that the judgment entitling plaintiff to recover the $25,000 deposited in escrow, is supported by substantial evidence and should be affirmed. In reference to the further judgment of $525 in plaintiff's favor, respondent concedes that this finds no support in the evidence.

George G. Riff, as cross-appellant, contends that "Upon the termination of an escrow for failure of consideration, the purchaser (Riff) is entitled to recover back his deposit with interest thereon." In opposition, cross-respondents call attention to the fact that the $25,000 deposit at all times remained in the custody of the escrow holder as the agent of both parties and never reached the hands of the sellers.

A survey of the record discloses that, although the evidence is in some conflict in reference to certain phases of the controversy, nevertheless, the material findings and judgment of the trial court in favor of the plaintiff, are supported by substantial evidence. In that state of the record the rule is well established that a reviewing court will not weigh the evidence or interfere with the decision of the trial judge. Such rule is particularly applicable to the findings that there was a complete failure of consideration and that the objects contemplated by the escrow agreement were impossible of fulfillment. Under those circumstances it would be contrary to both law and equity to permit defendants to retain the $25,000 deposited in escrow by the plaintiff.

The impossibility of conducting on the premises, "AN ON-SALE Distilled Spirits, Liquor, Beer, Wine, Beverages and General Merchandise establishment," specified in the escrow instructions as the express "purpose" of the transaction, would undoubtedly be of sufficient materiality to excuse the plaintiff from further performance of the contract. There is, moreover, substantial evidence to support the finding that this impossibility did not result "solely" from the plaintiff's actions or representations, as contended by the defendants. Under the zoning regulations in force, operation of a retail liquor establishment on the premises was prohibited. As commented upon in respondent's brief, Section 1598 of the Civil Code provides that "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, . . . the entire contract is void."

Cases cited by appellants holding that a purchaser who, without right, refuses to go on with the contract, are, of course,

only applicable in connection with appellants' contention that plaintiff's alleged default was solely responsible for collapse of the proposed transaction. In view of the evidence supporting the trial court's conclusion to the contrary, the principles enunciated therein are without point. The various contentions of the appellants, seeking to retain the plaintiff's $25,000 deposit, are not persuasive, and cannot prevail.

Appellants' argument that the plaintiff's recovery is precluded by reason of the latter's failure to deposit in escrow the balance of $7,500 called for by the agreement is without merit;—plaintiff had already paid in $25,000 for which no consideration was received. Likewise untenable is the contention that, as a condition precedent, plaintiff was obliged to return or tender to defendants the stock of liquor which was paid for outside of escrow, or to account for the operation of the premises during the brief period of Riff's occupancy. As respondent's brief avers, "The defendants cannot complain of this completed transaction as they received payment in full for the liquors at the price set by them."

A further question is presented by Riff as cross-appellant; namely, whether after termination of an escrow by reason of the failure of consideration, the purchaser is "entitled to interest on his moneys from the date of the termination." Cases cited by cross-appellant as justifying such an award of interest herein are *Allen* v. *Globe Grain and Milling Co.,* 156 Cal. 286 [104 P. 305]; *Hayt* v. *Bentel,* 164 Cal. 680 [130 P. 432]; and *Blank* v. *Olcovich Shoe Corp.,* 20 Cal.App. 2d 456 [67 P.2d 376]. However, as pointed out by cross-appellees, none of these cases involve a state of facts similar to that here presented; the purchase price in those cases was paid directly to the sellers and not deposited in escrow. And, under the holding in *Early* v. *Owens,* 109 Cal.App. 489 [293 P. 136], "It is the well settled law in California that the holder of an escrow is agent for all parties up to the time the escrow is closed." In legal contemplation, therefore, the deposit of $25,000 in the hands of the escrow holder was as much in plaintiff's possession as in that of the defendants, since the actual custodian, the escrow holder, was the agent of both plaintiff and defendants. No dereliction on the part of Mayhew, the escrow holder, is claimed. The trial court was correct in not making an award of interest.

Since it is conceded in respondent's brief that the trial court's additional award of $525 paid by plaintiff for renewal of the liquor license "finds no support in the evidence," the

judgment of the trial court in plaintiff's favor is hereby modified to the extent that plaintiff recover judgment only in the sum of $25,000 less the escrow expenses of Peter L. Mayhew, and as so modified is affirmed. Respondent to recover costs on appeal.

White, J. concurred.

A petition for rehearing was denied April 12, 1949, and opinion and judgment were modified to read as above. Defendants and appellants' petition for a hearing by the Supreme Court was denied May 16, 1949.